[655 NYS2d 53]

In the Matter of ARTHUR KASS, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, March 3, 1997

APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains *(Faith Lorenzo* of counsel), for petitioner.

*Sarah Diane McShea,* New York City, for respondent.

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent is charged with four allegations of professional misconduct. The Special Referee sustained all four charges. The Grievance Committee now moves to confirm the Special Referee's report while the respondent cross-moves to confirm in part and disaffirm in part and to limit any sanction imposed to a public censure.

Charge One alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law by converting funds entrusted to him and failing to account for those funds in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

The respondent represented Marguerite Piasecki in a matrimonial matter and/or real estate closing in or about 1987. The closing of the Piasecki property occurred on June 24, 1987. By agreement of the parties, $128,484.17 of the sale proceeds was given to the respondent for deposit in his escrow account at the Putnam County National Bank. The remaining $98,612.83 paid by the purchasers at the closing was entrusted to Mr. Piasecki's attorney.

The records for the respondent's special account at the Putnam County National Bank reflect the following authorized disbursements by him from the proceeds of the sale of the Piasecki property:

a. As agreed by the Piaseckis, on June 25, 1987, $96,700 was paid by certified check no. 771 to Marguerite Piasecki, who was purchasing a condominium.

b. On or about September 23, 1987, the respondent issued check no. 821 in the amount of $8,000 to Marguerite Piasecki.

c. On October 20, 1987, the respondent issued check no. 829 in the amount of $217.56 to Marguerite Piasecki.

d. On October 20, 1987, with his client's approval, the respondent issued check no. 830 in the amount of $900 payable to himself, in payment of his legal fees for handling the sale of Mrs. Piasecki's house and reviewing the contract for the purchase of her condominium (the respondent did not charge

Mrs. Piasecki any legal fees for handling her matrimonial matter).

e. On March 27, 1989, the Piaseckis having reached agreement on a property settlement, the respondent issued check no. 1014 in the amount of $14,935.67 to Marguerite Piasecki.

f. On December 3, 1991, the respondent issued check no. 1112, in the amount of $2,713.50, to Mrs. Piasecki. The respondent had opened a new IOLA account at the Putnam County Savings Bank in mid-1990 for client funds. The $2,713.50 transferred to Mrs. Piasecki represented the balance remaining in the special account at the Putnam County National Bank. The respondent forwarded this amount to Mrs. Piasecki after he concluded that his prior calculations of the amounts due to her were in error and that the remaining balance in the now-dormant account must belong to her.

g. As of February 2, 1995, the total amount of funds disbursed to Mrs. Piasecki or on her behalf was $123,466.73. In April 1995, having undertaken a thorough review of his bank records for all transactions, respondent paid an additional $1,463 to Mrs. Piasecki. The sum of $3,554.44 is still owed from the sale proceeds, although the correct recipient has yet to be determined.

On April 7, 1994, the respondent appeared and testified at the petitioner's offices, as requested. He was not represented by counsel. In response to the petitioner's questions, the respondent testified that he had closed his special account at the Putnam County National Bank in December 1991 and, further, that he later learned that there was a shortfall in the account of "maybe $6,000" which he was not able to account for or trace. The respondent explained that, without a full audit of the account and a thorough review of the files corresponding to the transactions he had handled, he could not determine why there was a shortfall in the account. In fact, the respondent had underestimated the Piasecki shortfall. A recent audit of the account concluded that there had been an underpayment from the Piasecki transaction of $5,018. The auditor who was retained by the respondent concluded on his May 1, 1995 report that there was no evidence that the respondent had received any portion of those funds or any other funds to which he was not entitled.

Charge Two alleged that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds entrusted to him and breached his fiduciary duty by failing to account for those funds, in violation of Code of Profes-

sional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

As of March 1, 1989, the balance in the respondent's special account should have included the approximately $22,667 remaining from the sale of the Piasecki property.

The actual balance in that account on March 1, 1989, as shown on the monthly bank statement, was $16,936.06. The deficiency in the account, approximately $5,731, is not in dispute. There is no evidence that the respondent personally benefitted from that deficiency or that he received any portion of those funds.

On March 27, 1989, the Piaseckis having agreed upon a property settlement in their pending matrimonial matter, the respondent disbursed $14,935.67 to Marguerite Piasecki from the funds on deposit in his special account. Following that disbursement, the balance in his special account should have included approximately $7,731 remaining from the proceeds of the sale of the Piasecki property. As reflected on the monthly bank statement for the account, the balance in the account on April 17, 1989 was $6,169.17. The deficiency in the account on that date, approximately $1,562, is not in dispute. There is no evidence that the respondent personally received any portion of those funds.

In July 1990, the respondent switched banks and opened a new account at the Putnam County Savings Bank, entitled "Arthur Kass, IOLA Account", account number 503370. From September 1990 until the account was formally closed in December 1991, there was no activity in the respondent's special account at the Putnam County National Bank, with one exception. On or about December 3, 1991, just prior to closing the account, the respondent disbursed $2,713.50, the entire remaining balance in the account, to Mrs. Piasecki. The balance in the account, prior to this final distribution, should have included the $7,731 remaining from the proceeds of the sale of the Piasecki property. The deficiency in the account, approximately $5,018, is not in dispute. There is no evidence that the respondent personally received any portion of those funds. The deficiencies in the special account, which has now been audited, were attributed by the auditor in his May 1, 1995 report to several calculation errors in amounts due to clients and third parties. There is no evidence that the respondent benefitted personally from any of these errors or that he received funds from his special account to which he was not entitled.

Charge Three alleged that the respondent engaged in conduct that adversely reflects on his fitness to practice law by improperly making withdrawals from his escrow account, in violation of Code of Professional Responsibility DR 9-102 (E) (22 NYCRR 1200.46 [e]).

Code of Professional Responsibility DR 9-102 (E) (22 NYCRR 1200.46 [e]) requires that all special account withdrawals be made only to a named payee and not to cash. The respondent failed to comply with that section by withdrawing funds payable to cash.

Charge Four alleged that the respondent engaged in conduct that adversely reflects on his fitness to practice law by failing to maintain and/or produce a ledger book or similar record and records for all deposits and withdrawals for his attorney escrow account, in violation of Code of Professional Responsibility DR 9-102 (D) (22 NYCRR 1200.46 [d]).

At his appearance at the Grievance Committee's offices on March 24, 1994, the respondent was asked to provide copies of his check registers, bank statements, cancelled checks, deposit slips, and ledger for his escrow accounts. The respondent agreed to provide this material by April 7, 1994. During his testimony at the Grievance Committee's offices on April 7, 1994, the respondent stated that he did not maintain a ledger for his escrow account. The respondent failed to provide bank statements for his Putnam County National Bank escrow account for October 1990 and December 1990 through November 1991.

On October 24, 1994, the Grievance Committee served the respondent with a court ordered judicial subpoena duces tecum, dated October 17, 1994. The subpoena directed the respondent to produce any and all deposit slips, deposit tickets, or deposit items, for both his Putnam County National Bank escrow account and his Putnam County Savings Bank escrow account. The respondent failed to produce deposit slips for his Putnam County National Bank escrow account for the period 1986-1991. Pursuant to Code of Professional Responsibility DR 9-102 (H) and (I) (22 NYCRR 1200.46 [h], [i]) failure to maintain the aforementioned records subjects the respondent to disciplinary proceedings.

The respondent knew or should have known, in committing the aforementioned acts, that he was violating Code of Professional Responsibility DR 1-102 (A) (8) and DR 9-102 (D) (1), (2) and (8); and (E) (22 NYCRR 1200.3 [a] [8]; 1200.46 [d] [1], [2], [8]; [e]).

With respect to Charge Four, the parties stipulated that the respondent did not maintain a ledger book for his escrow account at the Putnam County National Bank. The respondent did, however, maintain bank statements, cancelled checks, and check stubs and made notations on these and on documents in his files reflecting the activity in the special and IOLA accounts.

The Putnam County National Bank supplied to the Grievance Committee the deposit slips for the respondent's escrow account which were the subject of a subpoena duces tecum dated March 3, 1995, issued by this Court.

Based on the stipulations and the evidence adduced, we find that the Special Referee properly sustained all four charges. The Grievance Committee's motion to confirm is granted. The respondent's cross motion is granted only to the extent that the Special Referee's report is confirmed and is otherwise denied.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider that he has been practicing law for more than 40 years with a previously unblemished record and is a contributing member of the community who often renders legal services to those who can least afford them. While he concedes that it does not excuse his actions, the respondent submits that his family tragedies during this period almost certainly affected his attentiveness to his practice and contributed to the problems at issue in this proceeding. The respondent emphasizes the lack of any evidence that he misappropriated funds or misused his escrow account. He has taken steps to prevent similar problems from occurring in the future, such as maintaining a ledger and arranging for the auditor to review his records regularly. The respondent submits that he poses no threat to the public and is unlikely to make similar mistakes again. In view of the absence of venality or personal gain and his undisputed reputation for honesty, integrity and trustworthiness, the respondent submits that a censure would constitute an appropriate sanction.

Under the totality of circumstances, the respondent is suspended from practice for three years.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and KRAUSMAN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted and the respondent's cross motion is granted only to the extent that the Special Referee's

report is confirmed, the cross motion is otherwise denied in all respects; and it is further,

Ordered that the respondent, Arthur Kass, is suspended from the practice of law for a period of three years, commencing April 3, 1997, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of three years, upon furnishing satisfactory proof (a) that during the said period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10), and (c) that he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Arthur Kass, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.