[813 NYS2d 180]

In the Matter of YVES-MERRY TELEMAQUE, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, April 4, 2006

## APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Colette M. Landers* of counsel), for petitioner.

*Richard E. Grayson*, White Plains, for respondent.

### OPINION OF THE COURT

Per Curiam.

The petitioner served the respondent with a petition dated August 4, 2004, containing five charges of professional misconduct. The respondent served an answer dated August 26, 2004, and at the hearing, amended her answer and admitted each of the factual allegations in the petition. After a prehearing conference on October 28, 2004, and a hearing on December 8, 2004, the Special Referee sustained Charges One, Two, Three, and Four, and did not sustain Charge Five. The petitioner now moves to confirm the Special Referee's report insofar as it sustains Charges One through Four, to disaffirm the report insofar as it does not sustain Charge Five, and to impose such discipline upon the respondent as the Court may deem just and proper. The respondent does not oppose the motion but seeks to limit the discipline imposed to a public censure.

Charge One alleges that the respondent has engaged in a pattern and practice of failing to properly safeguard escrow funds entrusted to her as a fiduciary, incident to her practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

At all times relevant hereto, the respondent maintained an attorney escrow account identified as "IOLA - Yves-Merry Telemaque, P.C." account number xxxxxxx85-65, at Chase Manhattan Bank (now JP Morgan Chase Bank).

On or about November 6, 2001, the respondent deposited the sum of $6,750 into her attorney escrow account on behalf of client Bonhomme. From on or about November 6, 2001, until at least December 17, 2001, the respondent was required to

maintain the sum of $6,750 in her attorney escrow account on behalf of Bonhomme. By November 13, 2001, the balance in the respondent's attorney escrow account had been depleted to $2,769.07.

On or about November 28, 2001, the respondent deposited the sum of $16,000 into her attorney escrow account on behalf of client Moyse. From on or about November 28, 2001, until at least January 11, 2002, the respondent was required to maintain the sum of $16,000 in her attorney escrow account on behalf of Moyse. On or about December 31, 2001, the respondent's attorney escrow account had been depleted to $8,348.46.

On January 9, 2002, the respondent deposited the sum of $38,000 into her attorney escrow account on behalf of client Herbin. From January 9, 2002, until at least February 15, 2002, the respondent was required to maintain, after paying legitimate expenses on behalf of Herbin, at least the sum of $20,000 in her attorney escrow account on behalf of that client. On or about January 16, 2002, the respondent's attorney escrow account had been depleted to $14,188.33.

On or about January 16, 2002, the respondent deposited the sum of $20,000 into her attorney escrow account on behalf of client Guillaume. From on or about January 22, 2002, until at least March 25, 2002, the respondent was required to maintain the sum of $20,000 in her attorney escrow account on behalf of Guillaume. On or about February 15, 2002, the respondent's escrow account had been depleted to $14,586.03.

On March 8, 2002, the respondent deposited the sum of $10,000 into her attorney escrow account on behalf of clients Lalchan and Granger. From on or about March 8, 2002, until at least May 30, 2002, the respondent was required to maintain the sum of $10,000 in her attorney escrow account on behalf of clients Lalchan and Granger. On or about April 1, 2002, the respondent's escrow account had been depleted to $3,839.01.

On March 12, 2002, the respondent deposited the sum of $8,300 into her attorney escrow account on behalf of client Cordon. From on or about March 12, 2002, until at least April 3, 2002, the respondent was required to maintain, after extracting her legal fee, the sum of $5,285.92 in her attorney escrow account on behalf of client Cordon. On or about April 1, 2002, the balance in the respondent's attorney escrow account fell to $3,839.91.

On or about April 4, 2002, the respondent deposited the sum of $23,748.73 into her attorney escrow account on behalf of cli-

ent Mungin. From on or about April 4, 2002, until at least April 17, 2002, the respondent was required to maintain, after paying legitimate expenses on behalf of Mungin, the sum of $22,523.73 in her escrow account on behalf of that client. On April 15, 2002, the balance in the respondent's attorney escrow account fell to $21,543.29.

On April 17, 2002, the respondent deposited the sum of $5,000 into her attorney escrow account on behalf of client Stroud. From on or about April 17, 2002, until at least February 3, 2003, the respondent was required to maintain the sum of $5,000 in her attorney escrow account on behalf of Stroud. On several occasions, from April 17, 2002, until February 3, 2003, the balance in the respondent's attorney escrow account fell below $5,000.

On April 18, 2002, the respondent deposited the sum of $11,858 into her attorney escrow account on behalf of client Emmanual. From on or about April 18, 2002, until at least September 19, 2002, the respondent was required to maintain, after paying legitimate expenses on behalf of Emmanual, the sum of $8,858 in her attorney escrow account on behalf of that client. On May 13, 2002, the balance in the respondent's attorney escrow account fell to $8,437.23.

Charge Two is predicated upon the facts alleged in Charge One with respect to the respondent's maintenance of an attorney escrow account and alleges that the respondent has engaged in a pattern and practice of drawing checks from her IOLA account prior to the deposit of the corresponding clients funds, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about August 16, 2001, the respondent issued check number 1352 in the sum of $1,150.75 to Judicial Title Insurance Agency and check number 1353 in the sum of $150 to Fran Girimonti, from her attorney escrow account, on behalf of client Sabin. The respondent failed to deposit the corresponding client funds into her attorney escrow account prior to issuing said checks.

On or about January 8, 2002, the respondent issued from her attorney escrow account check number 1380 in the sum of $1,587 to G&G Engineering, check number 1390 in the sum of $10,576.25 to Lex Terrae, check number 1391 in the sum of $185 to J. Wainer, and check number 1392 in the sum of $647.55 to Fairbanks, on behalf of client Herbin. The respondent failed to deposit the corresponding client funds into her attorney escrow account prior to issuing said checks.

On or about January 11, 2002, the respondent issued check number 1395 in the sum of $29,383.09 from her attorney escrow account to Jane C. Sullivan on behalf of client Moyse. The respondent failed to deposit the corresponding client funds into her attorney escrow account prior to issuing said check.

On or about February 7, 2002, the respondent issued check number 1404 in the sum of $1,000 from her attorney escrow account, to herself, for her legal fees or disbursements, on behalf of client Pierre-Louis, whom she represented in a personal injury case. The respondent failed to deposit the corresponding client funds into her attorney escrow account prior to issuing said check.

On or about May 1, 2002, the respondent issued check number 1408 in the sum of $2,500 from her attorney escrow account, to herself for her legal fees and disbursements, on behalf of client Gerda Cordon, whom she represented in a personal injury case. The respondent failed to deposit the settlement proceeds for client Cordon into her attorney escrow account prior to issuing said check.

On or about September 30, 2002, the respondent issued check number 1452 in the sum of $15,740 from her attorney escrow account to Cleve Dwyer, on behalf of client Kernisant. The corresponding client funds were not deposited into the respondent's attorney escrow account prior to her issuing said check.

Charge Three is predicated upon the facts alleged in Charge One with respect to the respondent's maintenance of an attorney escrow account and alleges that the respondent improperly commingled personal and/or business funds with funds entrusted to her as a fiduciary incident to her practice of law in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Between August 2001 and October 2002, the respondent maintained funds entrusted to her as a fiduciary, incident to her practice of law, in her attorney escrow account.

Between August 2001 and October 2002, the respondent also deposited personal funds into her attorney escrow account.

Between August 2001 and October 2002, the respondent failed to withdraw her legal fees from her attorney escrow account when earned.

Charge Four is predicated upon facts alleged in Charge One with respect to the respondent's attorney escrow account and

alleges that the respondent has improperly drawn a check to cash from her IOLA account in violation of Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]).

On or about December 4, 2001, the respondent issued check number 1377 in the sum of $1,007 payable to cash, from her attorney escrow account.

Charge Five alleges that the respondent failed to maintain a ledger book or similar record of deposits into and withdrawals from her IOLA account in violation of Code of Professional Responsibility DR 9-102 (d) (22 NYCRR 1200.46 [d]).

The respondent failed to contemporaneously maintain a ledger book or similar record for her attorney escrow account showing: the source of all funds deposited therein; the names of all persons for whom funds were held; the amount of such funds; the charges or withdrawals from the account; and the names of all persons to whom such funds were disbursed.

Based upon the respondent's admissions and the evidence adduced, we find that the Special Referee properly sustained Charges One, Two, Three, and Four of the petition and erred in failing to sustain Charge Five of the petition. With respect to Charge Five, this Court has held that neither check stubs nor a check register, nor notations of documents in files constitute a sufficient record of deposits into and withdrawals from a fiduciary account (see Matter of Gilde, 276 AD2d 178 [2000]; Matter of Kass, 230 AD2d 94 [1997]). Accordingly, the motion to confirm the Special Referee's report with respect to Charges One, Two, Three, and Four, and to disaffirm the Special Referee's report with respect to Charge Five is granted. In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider such factors as her deep remorse, her lack of venal intent, her cooperation with the Grievance Committee, her vital service to her community, the character letters submitted on her behalf, and her reorganization of her office and move to eliminate any future recurrences.

The petitioner points out that on April 29, 2005, it issued a letter of caution to the respondent with respect to her neglect of a case which was delayed by her failure to discover until May 2004, that an order had been issued in March 2002, denying a motion on behalf of her client for summary judgment.

In view of the mitigation advanced, the respondent is publicly censured for her professional misconduct.

PRUDENTI, P.J., FLORIO, H. MILLER, SCHMIDT and SPOLZINO, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report with respect to Charges One, Two, Three, and Four and to disaffirm the Special Referee's report with respect to Charge Five is granted; and it is further,

Ordered that the respondent is publicly censured for her professional misconduct.